FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2011 JUL 15 PM 2:31
CLERK Cadwell
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

PETER ABBADESSA,

    Petitioner,

v.                         CIVIL ACTION NO.: CV211-084

ANTHONY HAYNES, Warden,

    Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Peter Abbadessa ("Abbadessa"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Response. Abbadessa alleges that the Bureau of Prisons ("BOP") denied his due process rights during a disciplinary hearing, in which he was found to have violated Code 104 (possession of a weapon). Abbadessa alleges: 1) he did not receive a written copy of the charges against him within twenty-four hours of the time staff became aware of the incident; 2) he did not have a staff representative present during his disciplinary hearing; 3) he should not be held responsible for a weapon concealed in another inmate's personal property; and 4) he was not given the opportunity to have the weapon fingerprinted or to take a polygraph test concerning the weapon's ownership. Respondent asserts that all due process guarantees in the disciplinary context were satisfied. For the reasons which follow, Abbadessa's petition should be **DENIED**.

## DISCUSSION AND CITATION TO AUTHORITY

On July 25, 2009, while Abbadessa was housed at the Federal Correctional Institution in Schulykill, Pennsylvania, a search was performed of the cell that Abbadessa occupied with another inmate and a homemade weapon known as a "shank" was found. The shank was concealed inside a pair of socks that was amongst institutional-issued clothing contained in a mesh bag laying on the bottom bunk, which was assigned to Abbadessa's cellmate.

Abbadessa alleges that after the weapon was found, at approximately 8:00 p.m. on July 25, 2009, he was placed in the special housing unit. At 8:47 p.m. that evening, Abbadessa was advised of his rights and recorded that he understood those rights on an incident report. The official copy of the incident report was delivered to Abbadessa at 8:55 p.m. on July 25, 2009.

Lieutenant Judy Poling ("Poling") investigated the incident. She reviewed other statements and evidence and arrived at the conclusion that Abbadessa did not have knowledge of the weapon, that the charges against him should be dismissed, and that he should be returned to the general population. Poling concluded that Abbadessa's cellmate was appropriately charged with possession of the shank based upon the location where it was found. She completed her investigation and referred the matter to the Unit Disciplinary Committee ("UDC").

The UDC received an oral statement from Abbadessa denying that the shank was his. The UDC sent the incident report to the Disciplinary Hearing Officer ("DHO"). On July 28, 2009, at 10:10 a.m., Abbadessa was given a written Notice of Discipline Hearing before the DHO. At that time, Abbadessa indicated on the form that he did

wish to have a staff member represent him at the hearing but did not indicate the name of a staff member he wished to have serve this function. He indicated that he did not wish to call any witnesses, and he signed his acknowledgment of receipt of the notice and his rights. Simultaneously, Abbadessa signed his acknowledgment of receipt of a separate statement of "Inmate Rights at Discipline Hearing." This notice states an inmate's right to receive a written copy of the charge against him at least twenty-four hours before appearing before the DHO, and the right to be represented by a staff member at the hearing and to call witnesses.

The hearing before the DHO occurred on August 17, 2009, at FCI Schuylkill. The DHO Report states that at the beginning of the hearing, Abbadessa was advised of his rights and that he waived the right to have a staff representative and the right to present witness testimony. According to the DHO report, Abbadessa stated the reason for his asserted belief that his cellmate had the weapon because the cellmate feared retaliation due to a controversy with a third inmate. He also explained that the cellmate became very defensive when Abbadessa offered to wash the contents of the mesh bag, which he said the cellmate was using as a pillow.

The DHO considered other items of evidence in addition to the testimony of Abbadessa. The DHO wrote that he "believed" the information provided by staff members "as they derived no known benefit by providing false information." (Doc. No. 8-1, p. 11). He explained his finding of Abbadessa's responsibility as follows:

> Inmates are responsible for the contents of their cell. The laundry bag had no specific labels nor the clothing found inside which would constitute specific ownership of the bag. The area in which the bag was found is considered to be a common area inside the cell where both inmates have equal access to it.

(Doc. No. 8-1, p. 12). The DHO also noted that neither inmate claimed responsibility for the weapon at their respective DHO hearings. Twice noting that the charge was substantiated by "the greater weight of the evidence," the DHO found that Abbadessa committed the prohibited act of possession of a weapon, and imposed the sanctions that Abbadessa now challenges.

A petitioner states a cognizable claim for the deprivation of his procedural due process rights where he alleges the deprivation of "life, liberty, or property." Wolff v. McDonnell, 418 U.S. 539, 556 (1974); U.S. Const. Amend. XIV, § 1 (providing, in pertinent part, that "nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ."). The deprivation of good time credit implicates a liberty interest. Wolff, 418 U.S. at 558 (holding that a prisoner's liberty must be protected even where, as is the case with good conduct time, the liberty interest itself is a statutory creation of the state).

Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) advance, written notice of the charges against him; (2) a written statement of the facts and evidence relied on and the reason for any disciplinary action taken; (3) the opportunity to call witnesses and present documentary evidence; and (4) an impartial hearing board. Id. at 563-67. In addition, the Supreme Court has held that a finding of "some evidence" in the record to support the decision of a prison disciplinary board is necessary to satisfy the requirements of due process. Superintendent, Mass. Corr. Inst. v. Hill 472 U.S. 445, 455 (1985). The determination of whether this standard is satisfied

merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.

Abbadessa claims he did not receive a written copy of the charges against him within twenty-four hours of the time BOP staff became aware of the incident. The evidence shows Abbadessa received a copy of the Incident Report on July 25, 2009, at 8:55 p.m., within two hours after the incident occurred. This was within twenty-four hours after the incident, as BOP policy provides. However, even if Abbadessa was able to demonstrate that the report was not given to him within 24 hours after the incident, this would show only a failure to comply with the ideal set forth in a BOP policy. It would not demonstrate a violation of a constitutional right. The DHO hearing was held on August 17, 2009, more than two weeks after Abbadessa received a copy of the incident report. This fully complied with the requirement that he be given at least twenty-four hours notice of the charges prior to the hearing. Therefore, due process is satisfied with respect to this issue.

Abbadessa claims he did not have a staff representative present during his DHO hearing, although he requested one at his UDC hearing. An inmate should be able to have "adequate substitute aid" from the staff if the inmate is illiterate or when "the complexity of the issue makes it unlikely that the inmate will be able to collect and present evidence necessary for an adequate comprehension of the case . . . ." Wolff, 418 U.S. at 570. There is nothing before the Court indicating that Abbadessa is illiterate, or that the issue was so complex that he could not adequately comprehend the case. Though the lack of a staff member at Abbadessa's hearing potentially violated

BOP policy, see BOP-PS 5270.09, it did not violate Abbadessa's constitutional due process rights.

Abbadessa states he was not given the opportunity to have the weapon fingerprinted or to take a polygraph test concerning the weapon's ownership. Abbadessa did not request a fingerprint or polygraph test before his DHO hearing, and these tests were not constitutionally required.

Abbadessa claims he should not be held responsible for a weapon concealed in another inmate's personal property. Despite the fact that, if this Court were reviewing the evidence, it might reach a different conclusion than that of the DHO, this Court cannot reweigh the evidence. Applying the "some evidence" standard, other courts have declined to set aside disciplinary determinations where prison officials have utilized the concept of "constructive possession" in imposing discipline upon more than one inmate as to prohibited items found in a common area to which each disciplined inmate had access. See, e.g., Ramos v. Garcia, 2011 WL 2173816, at *5 (C.D. Cal. 2011)(petitioner was not present when contraband was found under her bunk, where contraband was found in a common area accessible to 30 or more inmates, where she claimed she was not aware of the contraband, and where subsequently another inmate admitted the contraband belonged solely to her); Guarino v. Anderson, 2010 WL 5337836, *3 (W.D. Mo. 2010) ("Under the doctrine of constructive possession, prisoners can be disciplined when contraband is found in their living area, even if the area is accessible to other inmates and even if there is a lack of direct evidence indicating the inmate's guilt."). There is evidence in the record that could support the conclusion

reached by the DHO, including the fact that the shank was found in a common area in a bag with no indication as to who owned it.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Abbadessa's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 15th day of July, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE